25 F.3d 793
 62 USLW 2767
 UNITED STATES of America, Plaintiff-Counterdefendant-Appellee,
v.
1980 LEAR JET, MODEL 35A, SERIAL NUMBER 277, Defendant,
and
Learjet, Inc., a Delaware corporation, Counterclaimant-Appellant.
 No. 92-16989.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 15, 1994.
Decided May 31, 1994.
 
 Lawrence McDonough, Kimble, Gothreau & Nelson, Tucson, AZ, for counterclaimant-appellant.
 Arthur G. Garcia, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-counter-defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before: CHOY, REINHARDT, and LEAVY, Circuit Judges.
 Opinion by Judge LEAVY.
 LEAVY, Circuit Judge:
 
 
 1
 The holder of a mechanic's lien against property subject to forfeiture appeals from that portion of the district court's judgment denying costs, fees, and interest on the lien principal, arguing that the district court erred by concluding that an innocent lienholder was not entitled to post-seizure costs, fees, and interest under federal forfeiture law. For the reasons which follow, we reverse and remand.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 On April 13, 1989, Aero Servicios Ejecutivos Sinaloenses, S.A. de C.V. ("ASES"), a Mexican corporation and owner of a 1980 Lear Jet airplane ("jet"), entered into a maintenance and repair agreement with the Arizona office of Learjet, Inc. ("Learjet"), a Delaware corporation. Learjet performed the work requested and billed ASES therefor on June 12, 1989. When ASES failed to pay the $55,736.53 repair bill, Learjet placed the jet in its hangar. The federal government seized the jet on or about August 4, 1989, and filed the instant forfeiture action on February 13, 1990.
 
 
 3
 ASES, Learjet, and Mike Donahoe dba Mike Donahoe Aviation Company ("Donahoe") filed claims with the district court regarding the disposition of the jet. ASES defaulted and the district court later entered summary judgment against Donahoe. Those rulings were not challenged below, and neither ASES nor Donahoe is a party to this appeal. The district court eventually accepted the principal amount of Learjet's claim (i.e., the $55,736.53 repair bill), but rejected that portion of its claim that included costs, fees, and interest. Learjet has timely appealed from that ruling.
 
 ANALYSIS
 Standard of Review
 
 4
 This appeal raises the question of whether the district court correctly interpreted federal forfeiture law. A district court's interpretation of federal law is reviewed de novo. Ernst & Young v. Matsumoto (In re United Ins. Mgt., Inc.), 14 F.3d 1380, 1383 (9th Cir.1994).
 
 Discussion
 
 5
 This case turns on the interpretation of two federal statutes, 18 U.S.C. Sec. 981(a)(1)(A)[1] and 21 U.S.C. Sec. 881(a)(6),[2] both of which allow the government to seize and condemn for public use any property used in, or obtained from the proceeds of, criminal acts.[3] Learjet does not challenge the government's right to seize the jet, and the government does not dispute Learjet's right to receive payment for work performed on the jet; instead, the parties disagree about whether vel non Learjet is entitled to recover, in addition to the principal amount of its claim, those costs incurred in protecting its claim in the instant forfeiture proceedings, as well as the value of lost interest on the principal during the three years it took for the government to resolve this matter.
 
 
 6
 The government argues that, in the absence of any explicit statutory or contractual provision entitling Learjet to sue the government for costs, fees, and interest, the doctrine of sovereign immunity precludes Learjet from recovering against the government anything more than the principal amount of its claim. Learjet contends, however, that sovereign immunity is not involved here because Learjet is not actually suing the government; rather, Learjet is merely asserting its statutory right to recover the full amount of its claim, which includes the amount of its costs and fees incurred in protecting that claim, as well as interest thereon at the legal rate as compensation for delay in payment of the claim.
 
 
 7
 We have not previously faced the exact question raised in the instant appeal. However, in United States v. Real Property Located at 41741 National Trails Way, Daggett, Cal., 989 F.2d 1089 (9th Cir.1993) ("National Trails"), we hinted that the government should not be allowed to use the doctrine of sovereign immunity in a forfeiture proceeding as a means of avoiding its obligation to honor an innocent lienholder's right to recover the full amount of its compensable interest in the forfeited property. See id. at 1092 (rejecting the government's contention that an innocent lienholder could not recover more than the amount allowed by the government under its own administrative practices for remissions, based in part on the legislative history of the 1978 amendment to 21 U.S.C. Sec. 881(a)(6), which was designed to expand the rights of innocent parties). This notion of an "innocent lienholder" constitutes an exception to the rule that property used to facilitate a felony drug transaction will be forfeited in toto to the federal government. See 18 U.S.C. Sec. 981(a)(2) ("No property shall be forfeited ... to the extent of the interest of ... [a] lienholder by reason of any act ... established by that ... lienholder to have been committed without the [lienholder's] knowledge."). See also 21 U.S.C. Sec. 881(a)(6) (same with respect to an "innocent owner"); National Trails, 989 F.2d at 1090-91 (noting that "innocent lienholder" and "innocent owner" are synonymous for purposes of section 881). As it is undisputed that Learjet is an innocent lienholder, it follows that Learjet is entitled to recover the full amount of its interest in the jet. The question before us, therefore, is whether Learjet's interest must be limited to the principal amount of its bill, as argued by the government, or should include Learjet's costs, fees, and interest as well.
 
 
 8
 Once again, our opinion in National Trails is instructive. In that case we reversed the district court's denial of a lienholder's request for costs and fees incurred in protecting its lien in a forfeiture action, holding that the innocent lienholder's right to recover those expenses constituted an interest in property under 21 U.S.C. Sec. 881. 989 F.2d at 1092-93. Among the arguments advanced by the government in support of its contention that National Trails is inapposite is that National Trails involved a forfeiture of real property, while this appeal is concerned with a forfeiture of personal property. This contention is meritless.
 
 
 9
 Realty and personalty are treated alike under the forfeiture provisions of both 18 U.S.C. Sec. 981(a)(1)(A) and 21 U.S.C. Sec. 881(a)(6) and (a)(7). See National Trails, 989 F.2d at 1092 & n. 3. Cf. Shelden v. United States, 7 F.3d 1022, 1026 (Fed.Cir.1993) ("There is no difference ... between a mortgage lien and the materialmen's liens at issue in Armstrong [v. United States, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) ].").[4] Those Circuit-level cases that have discussed the question in the context of real property forfeitures have generally held that costs, fees, and/or interest are part and parcel of an innocent owner's compensable interest under the forfeiture statutes. See e.g. authorities cited in Shelden, 7 F.3d at 1029 n. 6.
 
 
 10
 The government next argues that National Trails and similar cases are readily distinguishable from the instant appeal because they involve statutory or contractual rights to costs, fees, and/or interest, while Learjet's agreement with ASES did not expressly provide therefor. We reject this contention as well. It is state law which determines the existence and extent of Learjet's property interest, see Mapes v. United States, 15 F.3d 138, 140 (9th Cir.1994) (citing Federal Deposit Ins. Corp. v. Soderling (In re Soderling), 998 F.2d 730, 733 (9th Cir.1993)), and the applicable state law (viz., Arizona) provides for the recovery of all costs, including interest, to a lienholder on its claim.[5] Cf. National Trails, 989 F.2d at 1093 (21 U.S.C. Sec. 881 does not preempt state law awarding attorney's fees to an innocent lienholder).
 
 
 11
 Put simply, state law governs our determination of Learjet's lienable interest in the jet, and that interest consists not only of the principal amount billed for services rendered, but also of the reasonable costs incurred by Learjet, including statutory interest on that amount. Contrary to the government's assertion, there is no issue of sovereign immunity here, because the government is not being required to pay interest out of the United States Treasury. The government simply obtained an ownership interest in a portion of the proceeds of the sale of property, and, like any other partial owner, is only entitled to receive the sum attributable to that portion of the property that was lawfully forfeited. That amount does not include the value of Learjet's interest in the property as an innocent lienholder.
 
 CONCLUSION
 
 12
 The district court erred by denying Learjet its right to recover the full amount of its interest as an innocent lienholder in the jet. Accordingly, the decision appealed from is
 
 
 13
 REVERSED and REMANDED for further proceedings consistent with the above.
 
 
 
 [1]
 "Sec. 981. Civil forfeiture[.] (a)(1) ... [T]he following property is subject to forfeiture to the United States: (A) Any property ... involved in a transaction or attempted transaction in violation of section ... 1956 or 1957 of this title, or any property traceable to such property." 18 U.S.C. Sec. 981(a)(1)(A) (in relevant part). Sections 1956 and 1957 of Title 18, United States Code, criminalize money laundering and the acquisition of property derived from such criminal conduct
 
 
 [2]
 "Sec. 881. Forfeitures[.] Subject property[.] (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them: * * * (6) All ... things of value furnished ... by any person in exchange for a controlled substance in violation of this subchapter, [and] all proceeds traceable to such an exchange[.]" 21 U.S.C. Sec. 881(a)(6) (in relevant part)
 
 
 [3]
 The government also cited to 18 U.S.C. Secs. 1956 and 1957, and to 49 U.S.C.App. Sec. 1472(b)(1)(B) and (3)(A), in its Verified Complaint for Forfeiture. The first two statutes criminalize money laundering and the acquisition of property derived from such misconduct, while the latter provision allows the Drug Enforcement Administration and the Customs Service to seize falsely certified, marked, or registered aircraft. Those statutes have no direct bearing on the merits of this appeal and will not be further discussed
 
 
 [4]
 The Shelden case involved a forfeiture of realty under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961 et seq., rather than under the Comprehensive Drug Abuse Prevention and Control Act ("CDAPCA"), 21 U.S.C. Sec. 881. However, the Court of Appeals for the Federal Circuit held that, at least for purposes of constitutional taking analysis, a forfeiture under RICO was tantamount to a forfeiture under the CDAPCA. See 7 F.3d at 1029 & nn. 6, 7
 
 
 [5]
 "When [a] ... vehicle ... is repaired ... with labor, with or without material, by a ... mechanic ... or other workman, such person shall have a lien thereon ... and may retain possession thereof until the amount due is fully paid." Ariz.Rev.Stat.Ann. Sec. 33-1021. An airplane is a lienable vehicle under section 33-1021. Coast to Coast Mktg. v. Gordon B. Hamilton Co., 164 Ariz. 73, 74, 790 P.2d 771, 772 (1990). A lienholder is entitled to both pre- and post-judgment interest on a liquidated debt (defined as a right to a sum certain vested in the plaintiff, i.e., an obligation in which "the evidence furnishes data which, if believed, makes it possible to compute the amount [due] with exactness," Employer's Mut. Cas. Co. v. McKeon, 170 Ariz. 75, 78, 821 P.2d 766, 769 (1991)), at the rate of 10% per annum. Ariz.Rev.Stat.Ann. Sec. 44-1201(A); McKeon, 170 Ariz. at 78, 821 P.2d at 769